Matthew J. Langley (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 773-554-9354
matt@almeidalawgroup.com

*Attorney for Plaintiff and the Proposed Classes*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER REILLY, *individually and on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVIDS NATURAL TOOTHPASTE, INC.<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*)<br>2. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*)<br>3. Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*)<br>4. Breach of Implied Warranty of Merchantability<br>5. Fraud by Misrepresentation<br>6. Negligent Misrepresentation<br>7. Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

1.     Plaintiff Alexander Reilly ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned attorney, brings the following class action complaint against Defendant Davids Natural Toothpaste, Inc. ("Defendant") and alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

2.     In recent years, consumer demand for toothpaste made from natural, organic, and clean ingredients has skyrocketed as health-conscious consumers seek products free of contaminants and other harmful chemicals.  When making these purchasing decisions, consumers rely on information provided by the toothpaste manufacturer on the product's packaging and on the manufacturer's website.  And reasonably so.  The average consumer is not in a position to determine whether the representations on the packaging about the quality or safety of the product are true. They must trust that the manufacturer's representations are truthful and accurate, and that the manufacturer has not omitted any important or material information about the product from its labeling.

3.     However, while Defendant represents that its toothpaste is "safe" and comprised of "clean ingredients,"[1] in reality its toothpaste contains powerful neurotoxins like led and arsenic in concentrations that are harmful to human health.

4.     Defendant has improperly, deceptively, and misleadingly labeled and marketed Davids Hydroxi Sensitive + Whitening Nano Hydroxyapatite Premium Toothpaste – Peppermint ("Davids Premium Toothpaste") to reasonable consumers, like Plaintiff and Class Members, by stating that it is "safe" and comprised of "clean ingredients"[2] and by omitting and not disclosing to consumers on its packaging that

---

[1] DAVIDS NATURAL TOOTHPASTE, https://davids-usa.com/products/davids-sensitive-whitening-nano-hydroxyapatite-toothpaste (last visited May 6, 2025).

[2] *Id.*

Davids Premium Toothpaste is contaminated with unsafe levels of lead and arsenic, which are known to cause a host of serious health conditions including impaired brain development, breathing problems, abnormal heart rhythms, and cancer.

5.     Plaintiff and Class Members relied on Defendant's misrepresentations on and omissions from Davids Premium Toothpaste's packaging and marketing materials, which were prepared, reviewed, and approved by Defendant and its agents and disseminated by Defendant and its agents.  The misrepresentations and omissions were material content that a reasonable consumer would consider important when purchasing Davids Premium Toothpaste.

6.     This action seeks injunctive and monetary relief on behalf of Class Members, including an order requiring Defendant to recall all Davids Premium Toothpaste that does not disclose the presence of lead and arsenic, enjoining Defendant from selling Davids Premium Toothpaste that contains lead and arsenic, and restoring monies to Plaintiff and Class Members, all of whom would not have purchased Davids Premium Toothpaste had they known it contained lead and arsenic.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over all causes of action alleged in this Class Action Complaint under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and minimal diversity exists because at least one member of the Class resides in a state other than the state in which Defendant is a citizen.

8.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District in the state of California.  Further, Defendant conducts and transacts business in the state of California and contracts to supply goods within the state of California, such that it has had continuous and systematic contacts with the state of California.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant's principal place of business is in this District.

## PARTIES

10.      Plaintiff Alexander Reilly is and, at all relevant times, has been a citizen of the state of California, in the county of Los Angeles.

11.      Plaintiff purchased Davids Premium Toothpaste beginning in approximately October 2024 and as recently as March 2025.   When Plaintiff purchased Davids Premium Toothpaste, he did not know that it contained lead and arsenic, and he would not have made the purchases had he known.

12.      During the time Plaintiff purchased and used Davids Premium Toothpaste, and due to Defendant's misrepresentations and omissions concerning the presence of lead and arsenic in Davids Premium Toothpaste, Plaintiff was unaware that Davids Premium Toothpaste contained any level of lead or arsenic.   Plaintiff would not have purchased Davids Premium Toothpaste if Defendant had disclosed that Davids Premium Toothpaste contains lead and arsenic.

13.      Defendant Davids Natural Toothpaste, Inc. produces toothpaste, toothbrushes, and dental floss.   Defendant's headquarters and principal place of business is located at 33360 Zeiders Road, Suite 106, Menifee, California.  Defendant produces, markets, distributes, and sells of Davids Premium Toothpaste throughout the state of California and the United States.

14.      During all relevant times, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of Davids Premium Toothpaste.   Defendant therefore had control over how to label Davids Premium Toothpaste concerning its contents.

15.      Defendant knowingly created, allowed, oversaw, and authorized the

unlawful, fraudulent, unfair, misleading, and deceptive packaging and related marketing for Davids Premium Toothpaste, which did not disclose the presence of lead and arsenic and instead touted the safety of Davids Premium Toothpaste.

16.    Davids Premium Toothpaste includes Davids Hydroxi Sensitive + Whitening Nano Hydroxyapatite Premium Toothpaste – Peppermint:



## FACTUAL BACKGROUND

### I.    Davids Premium Toothpaste Contains Lead and Arsenic

17.    In April 2025, the product safety advocacy group Lead Safe Mama published a chart containing the toxicant profiles of fifty-one toothpaste and tooth powder products (the "LSM Chart").[3]   The toxicant profiles in the LSM Chart are derived from laboratory reports produced by independent, third-party laboratories that

---

[3] Tamara Rubin, *Chart Comparing the Toxicant Profiles of Popular Toothpaste and Tooth Powder Products Tested by an Independent, Third-Party Lab in 2025*, Lead Safe Mama (Jan. 31, 2025), https://tamararubin.com/2025/01/toothpaste-chart/.

1  tested the products.[4]

2  18.    The LSM Chart shows that Davids Premium Toothpaste tested positive

3  for detectable levels of lead and arsenic in the following concentrations:

4  a.  Lead: 457.0 parts per billion ("ppb")

5  b.  Arsenic: 202.0 ppb

6  19.    While most of the fifty-one toothpaste and tooth powder products

7  described in the LSM Chart tested positive for detectable levels of some heavy metals,

8  it is notable that five of the toothpaste products did not test positive for detectable

9  levels of these heavy metals, demonstrating that toothpaste can be manufactured

10  without these contaminants.

11  **II.    The Concentrations of Lead and Arsenic in Davids Premium Toothpaste are Harmful to Health and Require Disclosure.**

12

13  20.    Lead and arsenic are heavy metals with known serious adverse health

14  effects associated with human exposure to these metals.[5]

15  21.    The Food and Drug Administration ("FDA") and the World Health

16  Organization ("WHO") have declared lead and arsenic "dangerous to human health."[6]

17  22.    Indeed, the FDA has acknowledged that "exposure to these [heavy

18  metals is] likely to have the most significant impact on public health" and has

19  prioritized them in connection with its Toxic Elements Working Group to look at

20

21

---

22  [4] *Id.*

23  [5] Barbosa, *et al.*, *A Critical Review of Biomarkers Used for Monitoring Human Exposure to Lead: Advantages, Limitations, and Future Needs*, ENVIRONMENTAL HEALTH PERSPECTIVES (Aug. 11, 2005).

24  [6] *Staff Report: Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, U.S. House of Representatives Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy, Feb. 4, 2021 ("House Report")                                        at                                        2,

25

26

27  https://oversightdemocrats.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

28

6

1    reducing the risks associated exposure to these heavy metals.[7]

2        23.    Heavy metals bioaccumulate in the body, meaning the body cannot

3    excrete the toxins as quickly as they are absorbed, and the risk they pose increases

4    over time and can remain in one's body for years.[8]

5        24.    It is paramount that manufacturers of consumable products test for these

6    dangerous contaminants and, when detected, at a minimum, disclose their presence.

7            *a.  Lead*

8        25.    There is no known safe level of exposure to lead.[9]  According to the

9    Centers for Disease Control and Prevention ("CDC"), the United States' public health

10   agency, "[c]onsuming even small amounts of lead can be harmful."[10]

11       26.    The CDC warns that harm from exposure to lead can range from illness

12   to even death.[11]  Scientific studies have shown that exposure to lead has profound

13   consequences, including reduced intelligence and an increased risk of mental illness,

14   dementia, hypertension, arrhythmia, and breast cancer.[12]

15   _____

16   [7] *Environmental Contaminants in Food*, U.S. Food & Drug Administration,
     https://www.fda.gov/food/chemical-contaminants-pesticides/environmental-
17   contaminants-food (last visited Apr. 27, 2025).

18   [8] *Heavy Metals in Baby Food: What you Need to Know*, Consumer Reports, Aug. 16,
     2018 (updated June 27, 2023), https://www.consumerreports.org/health/food-
19   safety/heavy-metals-in-baby-food-a6772370847/ (last visited Apr. 27, 2025).

20   [9] *Lead in Food and Foodwares*, CENTERS FOR DISEASE CONTROL AND PREVENTION,
     https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-
21   foodwares; Barbosa, *supra*.

22   [10] *About Lead in Foods, Cosmetics, and Medicines*, CENTERS FOR DISEASE CONTROL
     AND PREVENTION, https://www.cdc.gov/lead-prevention/prevention/foods-cosmetics-
23   medicines.html.

24   [11] *Id.*

25   [12] Maryse F. Bouchard, PhD, *et al.*, *Blood Lead Levels and Major Depressive
     Disorder, Panic Disorder, and Generalized Anxiety Disorder in US Young Adults*, 66
26   ARCHIVES OF GENERAL PSYCHIATRY 1313, 1317 (Dec. 2009); Marc G. Weisskopf, *et
     al.*, *Cumulative lead Exposure and Prospective Change in Cognition Among Elderly
27   Men*, 160 AMERICAN JOURNAL OF EPIDEMIOLOGY 1184, 1185, 1188, 1190-91 (2004);

28

27.     This is true even at low levels of lead consumption.

28.     For example, research has shown that an increase of only 0.3 micrograms/deciliter of median blood lead levels is associated with a doubling of the risk for panic disorder.[13]

29.     Studies have also shown that people exposed to low levels of lead lose an average of 1.37 IQ points per 1 microgram/deciliter increase in blood lead concentration.[14]

30.     Ingested lead accumulates in the bones and brain and can cause health problems even decades later.[15]

31.     And chronic low dose exposure to lead is believed to be associated with cognitive decline and dementia in older adults.[16]

### b. Arsenic

32.     The CDC warns that ingesting even low levels of arsenic can cause "nausea and vomiting, decreased production of red and white blood cells, abnormal heart rhythm, damage to blood vessels, and a sensation of 'pins and needles' in hands and feet."[17]

Olusegun I. Alatise, Gerhard N. Schrauzer, *Lead Exposure: A Contributing Cause of the Current Breast Cancer Epidemic in Nigerian Women*, BIOLOGICAL TRACE ELEMENTS RESEARCH 127, 138 (Mar. 3, 2010).

[13] Bouchard, *supra*, at 1317.  Note: in aqueous solutions, micrograms per leter and parts per billion are essentially equivalent because there are one billion micrograms in one liter.

[14] Richard L. Canfield, Ph.D, *et al.*, *Intellectual Impairments in Children with Blood Lead Concentrations Below 10 Micrograms per Deciliter*, THE NEW ENGLAND JOURNAL OF MEDICINE 1517, 1521 (Apr. 17, 2003).

[15] Weisskopf, *supra*, at 1184, 1185, 1188, 1190-91; Jennifer Weuve, *et al.*, *Cumulative Exposure to Lead in Relation to Cognitive Function in Older Women*, 117 ENVIRONMENTAL HEALTH PERSPECTIVES 574, 578 (Apr. 2009).

[16] Weisskopf, *supra*, at 1184, 1185, 1188, 1190-91; Weuve, *supra*, at 574, 578; Bouchard, *supra*, at 1318.

[17] *ToxFAQs for Arsenic*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=19&toxid=3.

33.    Studies have also shown that arsenic can cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological, and immunological effects,[18] impaired brain development, growth problems, breathing problems, and a compromised immune system."[19]

34.    By regulation, the FDA set the maximum allowable concentration of arsenic in bottled water at only 10 ppb.[20]

35.    By comparison, the concentration of arsenic in Davids Premium Toothpaste is 202 ppb,[21] *i.e.*, over twenty times the concentration limit set by the FDA for bottled water.

**III.    Defendant Failed to Disclose that Davids Premium Toothpaste Contains Lead and Arsenic.**

36.    Defendant lists the ingredients of Davids Premium Toothpaste on the packaging; however, as the following images show, Defendant fails to disclose that Davids Premium Toothpaste contains lead and arsenic.

---

[18] House Report at 10.

[19] Letter to FDA Acting Commissioner Janet Woodcock, signed by Senators Klobuchar, Blumenthal, Leahy, Duckworth, and Booker, June 21, 2021, *https://www.klobuchar.senate.gov/public/_cache/files/9/9/996f2cad-5295-432ba543-f69312988a78/37D015A1AC9DDF0E31B341F629469169.6.22.2021-formatted-letter-to-fda-on-baby-food-recall.pdf* (last visited Apr. 27, 2025) (citing *Arsenic and Children*, Dartmouth Toxic Metals Superfund Research Program, 2021, *https://sites.dartmouth.edu/arsenicandyou/arsenic-and-children/* (last visited Apr. 27, 2025).

[20] 21 CFR Part 165.110.

[21] LSM Chart, *supra*.





37.    Defendant also does not disclose the presence of lead or arsenic in Davids Premium Toothpaste on its website.

**IV.    Defendant Made Misrepresentations Concerning the Safety of Davids Premium Toothpaste.**

38.    Despite Davids Premium Toothpaste being contaminated with unsafe levels of lead and arsenic, Defendant misrepresents that Davids Premium Toothpaste is "safe" and is comprised of "clean ingredients."

39.    The following image from Defendant's website depicts Defendant's misrepresentations that Davids Premium Toothpaste is "safe" and is comprised of "clean ingredients":

CLASS ACTION COMPLAINT

**Description**

Hydroxi™ w/ nano hydroxyapatite (nHa) to repair sensitive teeth + remineralize enamel
natural whitening / antiplaque / fresh breath
safe + clean ingredients
fluoride free
sls free
recyclable metal tube
premium natural peppermint oil flavoring
proudly made in USA
4 oz / 113 g

## V.    Defendant's Misrepresentations and Omissions Concerning the Presence of Lead and Arsenic in Davids Premium Toothpaste Misled and Deceived Consumers.

40.    Defendant manufactures, markets, advertises, and sells consumer products.

41.    Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing process of Davids Premium Toothpaste, the manufacturing process of the ingredients and raw materials Davids Premium Toothpaste contains, and the risks associated with those processes, such as the risk of lead and arsenic contamination. Defendant also has the ability to test Davids Premium Toothpaste for lead and arsenic contamination prior to releasing Davids Premium Toothpaste into the stream of commerce.

42.    As such, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its toothpaste.

43.    Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of Davids Premium Toothpaste.

44.     Defendant knew that reasonable consumers such as Plaintiff and Class Members would be the end purchasers of David Premium Toothpaste and the targets of its advertising.

45.     Defendant intended that the packaging, its website, and implied warranties would be considered by the end purchasers of Davids Premium Toothpaste, including Plaintiff and Class Members.

46.     Defendant directly marketed to Plaintiff and Class Members through the packaging of Davids Premium Toothpaste and Defendant's website.  Plaintiff and Class Members are the intended beneficiaries of the implied warranties.

47.     Defendant's misrepresentations and omissions were material and intentional.  Consumers such as Plaintiff and Class Members are influenced by the marketing and advertising campaign and the labeling of Davids Premium Toothpaste, including the listed ingredients.  Defendant knew that if it had not omitted that Davids Premium Toothpaste contains lead and arsenic, then Plaintiff and Class Members would not have purchased Davids Premium Toothpaste at all.

48.     By making misrepresentations about the contents and safety of Davids Premium Toothpaste and omitting that Davids Premium Toothpaste contains lead and arsenic on the packaging and marketing materials for Davids Premium Toothpaste throughout the Class Period, Defendant knew that those misrepresentations and omissions are material to consumers since they would not purchase a product with harmful neurotoxins such as lead and arsenic.

49.     Defendant's misrepresentations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

50.     Defendant's false, misleading, and deceptive misrepresentations and omissions regarding Davids Premium Toothpaste are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and

1  mislead Plaintiff and Class Members.

2      51.    In making the false, misleading, and deceptive misrepresentations and

3  omissions, Defendant knew and intended that consumers would pay a premium for a

4  product marketed without lead and arsenic over comparable products not so marketed.

5  **VI.    Plaintiff's    and    Class    Members'    Reliance    on    Defendant's**

6  **Misrepresentations and Omissions was Reasonable and Foreseeable.**

7      52.    Consumers like Plaintiff and Class Members have become increasingly

8  concerned about the effects of ingredients in products that they orally ingest.

9  Companies like Defendant have capitalized on consumers' desire for safe products

10  and, indeed, consumers are willing to pay, and have paid, a premium for these

11  products.

12      53.    Consumers lack the meaningful ability to test or independently ascertain

13  or verify whether a product contains unsafe substances, such as lead or arsenic, and

14  therefore must and do rely on Defendant to truthfully and honestly report what Davids

15  Premium Toothpaste contains on its packaging.

16      54.    Consumers rely on packaging and marketing materials when making

17  purchasing decisions.

18      55.    Plaintiff and Class Members reasonably relied to their detriment on

19  Defendant's misrepresentations and omissions.

20      56.    The fact that Davids Premium Toothpaste is contaminated with lead and

21  arsenic is not information that is reasonably accessible to Plaintiff and Class

22  Members.

23  **VII.    Plaintiff and Class Members were Directly Harmed by Defendant's**

24  **Misrepresentations and Omissions.**

25      57.    As an immediate, direct, and proximate result of Defendant's false,

26  misleading, and deceptive misrepresentations and omissions, Defendant injured

27  Plaintiff and Class Members in that they:

28          a.  Paid a sum of money for Davids Premium Toothpaste that was not

what Defendant represented;

b.  Paid a premium price for Davids Premium Toothpaste that was not what Defendant represented;

c.  Were deprived of the benefit of the bargain because the products they purchased were different from what Defendant represented;

d.  Were deprived of the benefit of the bargain because the products they purchased had less value than what Defendant represented;

e.  Ingested substances that were of a different quality than what Defendant promised; and

f.  Were denied the benefit of the properties of Davids Premium Toothpaste that Defendant promised.

58.    Had Defendant not made the false, misleading, and deceptive misrepresentations and omissions, Plaintiff and Class Members would not have purchased Davids Premium Toothpaste or would not have been willing to pay the same amount for Davids Premium Toothpaste that they purchased and, consequently, Plaintiff and Class Members would not have been willing to purchase those Davids Premium Toothpaste products.

59.    The Davids Premium Toothpaste products that Plaintiff and Class Members received were worth less than the Davids Premium Toothpaste products for which they paid because the products they purchased contained lead and arsenic, which are each harmful heavy metals.

60.    Plaintiff and Class Members all paid for the Davids Premium Toothpaste products that they purchased.   Consequently, Plaintiff and Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct. Had Plaintiff and Class Members known that Davids Premium Toothpaste contains lead and arsenic, they would not have been willing to purchase it any price.

## CLASS ACTION ALLEGATIONS

61.    Plaintiff brings this action as a class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and all others similarly situated, as members of the following classes of persons (collectively, the "Classes" and "Class Members") against Defendant, subject to modification after discovery and case development:

> Nationwide Class:    All persons who purchased Davids Premium Toothpaste for household use and not for resale
>
> California Subclass:  All persons who, while in the state of California purchased Davids Premium Toothpaste for household use and not for resale.

62.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parent have a controlling interest and their current employees, officers and directors; (3) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (4) the legal representatives, successors, and assigns of any such excluded persons.

63.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and Class Members are ascertainable.

64.    The Class Members are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and the Court.

65.    Questions of law and fact common to Plaintiff and the Classes include, but are not limited to, the following:

> a. Whether Defendant knew or should have known that Davids

Premium Toothpaste contained or may contain lead or arsenic.

b. Whether Defendant failed to disclose that Davids Premium Toothpaste contained or may contain lead or arsenic;

c. Whether Defendant's omissions are material to a reasonable consumer;

d. Whether Defendant had knowledge that the omissions were material and false, deceptive, and misleading;

e. Whether the inclusion of lead and arsenic in Davids Premium Toothpaste is material to a reasonable consumer;

f. Whether Defendant's packaging and marketing materials for Davids Premium Toothpaste are false, deceptive, and misleading based on Defendant's omissions;

g. Whether Defendant's omissions are likely to deceive a reasonable consumer;

h. Whether Defendant made false or misleading statements of fact on the packaging of Davids Premium Toothpaste;

i. Whether Defendant made false or misleading statements of fact on the marketing material for Davids Premium Toothpaste;

j. Whether Defendant violated the laws of the State of California;

k. Whether Defendant owed a duty of care;

l. Whether Defendant breached its duty of care;

m. Whether Defendant owed a duty to disclose;

n. Whether Defendant breached its duty to disclose;

o. Whether Defendant breached its implied warranties;

p. Whether Defendant engaged in unfair trade practices;

q. Whether Defendant engaged in false advertising;

r. Whether the claims of Plaintiff and Class Members serve a public

1          benefit;

2          s.   Whether Plaintiff and Class Members are entitled to actual, statutory,

3             treble, and punitive damages; and

4          t.   Whether Plaintiff and Class Members are entitled to declaratory and

5             injunctive relief.

6      66.    Defendant engaged in a common course of conduct giving rise to the

7 legal rights sought to be enforced by Plaintiff individually and on behalf of the other

8 Class Members.  Identical statutory violations and business practices and harms are

9 involved.  Individual questions, if any, are not prevalent in comparison to the

10 numerous common questions that dominate this action.

11      67.    Plaintiff's claims are typical of those of the Class Members in that they

12 are based on the same underlying facts, events, and circumstances relating to

13 Defendant's conduct.

14      68.    Plaintiff will fairly and adequately represent and protect the interests of

15 the Classes, has no interest incompatible with the interests of the Classes, and has

16 retained counsel competent and experienced in class action, consumer protection, and

17 false advertising litigation.

18      69.    Class treatment is superior to other options for resolution of the

19 controversy because the relief sought for each member of the Classes is small such

20 that, absent representative litigation, it would not be feasible for Class Members to

21 redress the wrongs done to them.

22      70.    Questions of law and fact common to the Classes predominate over any

23 questions affecting only individual Class Members.

24      71.    As a result of the foregoing, class treatment is appropriate.

25

26

27

28

CLASS ACTION COMPLAINT

**COUNT I**
**Violation of the Unfair Competition Law,**
**California Business & Professions Code § 17200, *et seq.*,**
***(On behalf of Plaintiff & the Nationwide Class)***

72.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

73.    Plaintiff brings this claim individually and on behalf of Class Members against Defendant.

74.    The Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal Bus. & Prof. Code § 17200.

**Fraudulent**

75.    Defendant's failure to disclose that Davids Premium Toothpaste contains lead and arsenic is likely to deceive reasonable consumers and the public.

76.    Defendant's material misrepresentations concerning the safety and contents of Davids Premium Toothpaste are likely to deceive reasonable consumers and the public.

**Unlawful**

77.    As alleged herein, Defendant's failure to disclose the presence of lead and arsenic in Davids Premium Toothpaste as well as Defendant's material misrepresentations concerning the safety and contents of Davids Premium Toothpaste violates at least the following laws:

      a.  The CLRA, California Business & Professions Code §§ 1750, *et seq.*;

      b.  The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*; and

      c.  The Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code §§ 109875, *et seq.*

**Unfair**

78.    Defendant committed unfair practices by selling Davids Premium

18

Toothpaste without disclosing the presence of lead and arsenic contained therein or without adequate testing or screening for lead or arsenic, which rendered Davids Premium Toothpaste adulterated and misbranded.

79.    Defendant's conduct with respect to the packaging, marketing, and sale of Davids Premium Toothpaste is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers, and the utility of Defendant's conduct, if any, does not outweigh the gravity of the harm to its victims.

80.    Defendant's conduct with respect to the packaging, marketing, and sale of Davids Premium Toothpaste is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law.

81.    Defendant's conduct with respect to the packaging, marketing, and sale of Davids Premium Toothpaste is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers, themselves, can reasonably avoid.

82.    Defendant was obligated to disclose the presence of lead and arsenic in Davids Premium Toothpaste because (1) Defendant had exclusive knowledge of the presence of lead and arsenic in Davids Premium Toothpaste that was not known or reasonably accessible to Plaintiff and Class Members; and (2) Defendant actively concealed the presence of lead and arsenic from Plaintiff and Class Members.

83.    Plaintiff and Class Members relied on representations made by Defendant on packaging and marketing materials for Davids Premium Toothpaste when making their purchasing decisions.  If Plaintiff and Class Members had known Davids Premium Toothpaste contained lead and arsenic, they would not have purchased Davids Premium Toothpaste.

84.    In accordance with California Business & Professions Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business

through fraudulent or unlawful acts and practices and to recall all Davids Premium Toothpaste that contains lead or arsenic and that does not disclose the same.

85.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase Davids Premium Toothpaste in the future if he can be assured Davids Premium Toothpaste does not contain lead or arsenic.

86.    On behalf of himself and the Classes, Plaintiff also seeks an order for the restitution of all monies from the sale of Davids Premium Toothpaste, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT II
### Violation of California's False Advertising Law,
### California Business & Professions Code §§ 17500, *et seq.*,
### *(On behalf of Plaintiff & the Nationwide Class)*

87.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

88.    Plaintiff brings this claim individually and on behalf of Class Members against Defendant.

89.    California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

90.    As set forth herein, Defendant's failure to disclose that Davids Premium Toothpaste contains lead and arsenic is likely to deceive the public.

91.    Further, Defendant's material misrepresentations concerning the safety and contents of Davids Premium Toothpaste are likely to deceive the public.

92.    Defendant knew or should have known Davids Premium Toothpaste contained undisclosed levels of lead and arsenic.

93.    Defendant intended to deceive reasonable consumers and the public by failing to disclose that Davids Premium Toothpaste contains lead and arsenic and by

making material misrepresentations concerning the safety and contents of Davids Premium Toothpaste.

94.    Defendant had a duty to disclose the presence of lead and arsenic in Davids Premium Toothpaste, and by failing to disclose this information, misled consumers.

95.    If Defendant had disclosed the presence of lead and arsenic in Davids Premium Toothpaste or made consumers aware of its failure to disclose this information, Plaintiff and Class Members would not have purchased Davids Premium Toothpaste.

96.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase Davids Premium Toothpaste in the future if he can be assured Davids Premium Toothpaste does not contain lead or arsenic.

97.    Plaintiff and Class Members are entitled to injunctive and equitable relief as well as restitution in the amount they spent on Davids Premium Toothpaste.

## COUNT III
### Violation of California's Consumer Remedies Act,
### California Civil Code § 1750, *et. seq.*,
### *(On behalf of Plaintiff & the Nationwide Class)*

98.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

99.    Plaintiff brings this claim individually and on behalf of Class Members against Defendant.

100.    Plaintiff and Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

101.    Davids Premium Toothpaste products are "goods," as that term is defined in California Civil Code § 1761(a).

102.    Plaintiff, each member of the Classes, and Defendant are each a "person"

1  as that term is defined in California Civil Code § 1761(c).

2      103.   Plaintiff and each member of the Classes' purchases of Davids Premium

3  Toothpaste constituted a "transaction" as that term is defined in California Civil Code

4  § 1761(e).

5      104.   Defendant's conduct alleged herein violates the following provisions of

6  California's Consumers Legal Remedies Act ("CLRA"):

7          a. California Civil Code § 1770(a)(5) by failing to disclose the presence

8             of lead and arsenic in Davids Premium Toothpaste;

9          b. California Civil Code § 1770(a)(7) by knowingly, recklessly, or

10            intentionally representing that Davids Premium Toothpaste products

11            were of a particular standard, quality, or grade, when they were of

12            another; and

13         c. California Civil Code § 1770(a)(9) by knowingly, recklessly, or

14            intentionally advertising Davids Premium Toothpaste products with

15            intent not to sell them as advertised.

16     105.   The omissions were material as reasonable consumers such as Plaintiff

17  and Class Members would deem the presence of lead and arsenic important in

18  determining whether to purchase Davids Premium Toothpaste.

19     106.   Defendant was obligated to disclose the presence of lead and arsenic in

20  Davids Premium Toothpaste because (1) Defendant had exclusive knowledge of the

21  presence of lead and arsenic in Davids Premium Toothpaste, which was not known

22  or reasonably accessible to Plaintiff and Class Members; and (2) Defendant actively

23  concealed the presence of lead and arsenic from Plaintiff and Class Members.

24     107.   As a direct and proximate result of these violations, Plaintiff and Class

25  Members have been harmed, and such harm will continue unless and until Defendant

26  is enjoined from using the misleading packaging and marketing materials described

27  herein in any matter in connection with the advertising and sale of Davids Premium

28

Toothpaste.

## **COUNT IV**
### **Breach of Implied Warranty of Merchantability**
### *(On behalf of Plaintiff & the Nationwide Class)*

108. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

109. Plaintiff brings this claim under California law individually and on behalf of Class Members against Defendant.

110. Defendant is a merchant engaging in the sale of goods to Plaintiff and Class Members.

111. There were sales of goods from Defendant to Plaintiff and Class Members.

112. As set forth herein, Defendant manufactured and sold Davids Premium Toothpaste and, prior to the time Davids Premium Toothpaste products were purchased by Plaintiff and Class Members, impliedly warranted that those products were merchantable quality, conformed to the promises and affirmations of fact made on the packaging, and were fit for their ordinary use, *i.e.*, use by consumers.

113. Plaintiff and Class Members relied on these implied warranties when they purchased Davids Premium Toothpaste.

114. Davids Premium Toothpaste products were not merchantable quality, did not conform to the promises and affirmations of fact made on the packaging, and were not fit for their ordinary use as they included undisclosed levels of mercury and lead that do not conform to the packaging.

115. These promises became part of the basis of the bargain between Defendant and Plaintiff and Class Members and, therefore, constituted implied warranties.

116. Defendant breached its implied warranties by selling Davids Premium Toothpaste that contained undisclosed lead and arsenic.

117. Privity exists because Defendant manufactured and sold Davids Premium Toothpaste directly to Plaintiff and Class Members.

118. Defendant impliedly warranted to Plaintiff and Class Members that Davids Premium Toothpaste did not contain contaminants such as lead and arsenic by failing to disclose the presence of lead and arsenic while making promises about the quality and nature of Davids Premium Toothpaste, including that its products are "safe" and comprised of "clean ingredients."

119. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff and Class Members suffered actual damages because they purchased Davids Premium Toothpaste products that were worth less than the price paid and they would not have purchased Davids Premium Toothpaste if Defendant had disclosed that Davids Premium Toothpaste contains lead and arsenic.

120. Plaintiff, on behalf of himself and Class Members, seeks actual damages for Defendant's failure to deliver goods that conform to its implied warranties and resulting breach.

## COUNT V
### Fraud by Misrepresentation
### *(On behalf of Plaintiff & the Nationwide Class)*

121. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

122. Plaintiff brings this claim under California law individually and on behalf of Class Members against Defendant.

123. Defendant's claims on packaging and in marketing materials for Davids Premium Toothpaste gave Plaintiff and Class Members the impression that Davids Premium Toothpaste did not contain lead or arsenic, which was material to Plaintiff and Class Members when deciding whether to purchase and use Davids Premium Toothpaste.

124. Defendant's claims on packaging and in marketing materials for Davids

Premium Toothpaste were false because Davids Premium Toothpaste contained lead and arsenic.

125.    Defendant knew that its claims on packaging and in marketing materials for Davids Premium Toothpaste were false when Defendant made them because:

    a.  Defendant was in a superior position to know the chemical composition of Davids Premium Toothpaste;

    b.  Defendant was in a superior position to know the suitability of Davids Premium Toothpaste for its ordinary use; and

    c.  Defendant knew that ordinary consumers such as Plaintiff and Class Members could not reasonably have been expected to learn about the presence of lead and arsenic in Davids Premium Toothpaste without Defendant disclosing that information.

126.    Defendant intended for consumers, including Plaintiff and Class Members, to rely on its claims on packaging and in marketing materials for Davids Premium Toothpaste.

127.    Plaintiff and each member of the Classes reasonably relied on Defendant's misrepresentations on packaging and in marketing materials for Davids Premium Toothpaste.

128.    Plaintiff and each member of the Classes were harmed as a direct and proximate result of Defendant's conduct.  Plaintiff and Class Members suffered actual damages because they purchased Davids Premium Toothpaste products that were worth less than the price paid and they would not have purchased Davids Premium Toothpaste if Defendant had disclosed that Davids Premium Toothpaste contains lead and arsenic.

129.    Plaintiff and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under law.

CLASS ACTION COMPLAINT

## COUNT VI
### Negligent Misrepresentation
#### *(On behalf of Plaintiff & the Nationwide Class)*

130.   Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

131.   Plaintiff brings this claim under California law individually and on behalf of Class Members against Defendant.

132.   Defendant's claims on packaging and in marketing materials for Davids Premium Toothpaste conveyed to a reasonable consumer that Davids Premium Toothpaste does not contain lead or arsenic.

133.   Defendant's claims on packaging and in marketing materials for Davids Premium Toothpaste are material to a reasonable consumer because they relate to human health and safety.  Reasonable consumers would find that these claims are important and would be reasonably induced to purchase Davids Premium Toothpaste based on these claims.

134.   Defendant intended for consumers, including Plaintiff and Class Members, to rely on its claims on packaging and in marketing materials for Davids Premium Toothpaste.

135.   In selling Davids Premium Toothpaste, Defendant acted in the ordinary course of its business and had pecuniary interest in consumers purchasing its products.

136.   Defendant knew or was negligent in not knowing that Davids Premium Toothpaste contained lead and arsenic.

137.   Defendant negligently marketed that Davids Premium Toothpaste did not contain lead and arsenic, based on Defendant's claims on packaging and in marketing materials for Davids Premium Toothpaste.

138.   Plaintiff and Class Members reasonably and justifiably relied on Defendant's claims on packaging and in marketing materials for Davids Premium Toothpaste when purchasing Davids Premium Toothpaste and would not have

26

1  purchased Davids Premium Toothpaste had they known it contained lead or arsenic.

2      139.  Therefore, as a direct and proximate result of Defendant's negligent

3  misrepresentations, Plaintiff and Class Members have suffered actual damages in the

4  amount they spent on Davids Premium Toothpaste, plus interest thereon.

### COUNT VII
### Unjust Enrichment
### *(On behalf of Plaintiff & the Nationwide Class)*

    140.  Plaintiff incorporates by reference the allegations contained in the
paragraphs above as if set forth fully herein.

    141.  Plaintiff brings this claim under California law individually and on
behalf of Class Members against Defendant.

    142.  Plaintiff and Class Members have conferred substantial benefits to
Defendant through the purchases of Davids Premium Toothpaste products.
Defendant knowingly and willingly accepted, retained, and enjoyed these benefits.

    143.  Defendant either knew or should have known that the payments rendered
by Plaintiff and Class Members were given and received with the expectation that the
Davids Premium Toothpaste products would not contain lead and arsenic.  As such,
it would be inequitable for Defendant to retain the benefit of the payments under these
circumstances.

    144.  Defendant was obligated to disclose the presence of lead and arsenic in
Davids Premium Toothpaste because Defendant had exclusive knowledge of the
presence of lead and arsenic in Davids Premium Toothpaste and Defendant actively
concealed the presence of lead and arsenic in Davids Premium Toothpaste from
Plaintiff and Class Members.

    145.  Defendant's acceptance and retention of the benefits of the payments
from Plaintiff and Class Members under the circumstances alleged herein make it
inequitable for Defendant to retain these benefits.

    146.  Plaintiff and Class Members are entitled to recover from Defendant all

27

amounts wrongfully collected, plus interest thereon.

147. Plaintiff and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Alexander Reilly, on behalf of himself and others similarly situated, respectfully requests that the Court:

    a.  Certify the proposed Classes;

    b.  Appoint Plaintiff as class representative and Plaintiff's counsel as class counsel for each of the Classes;

    c.  Temporarily and permanently enjoin Defendant from selling Davids Premium Toothpaste that contains lead and arsenic or order Defendant to disclose the presence of lead and arsenic in Davids Premium Toothpaste on all packaging and marketing materials;

    d.  Order Defendant to recall all Davids Premium Toothpaste that does not disclose the presence of lead and arsenic on its packaging;

    e.  Award declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged in this Class Action Complaint and injunctive relief to remedy Defendant's conduct;

    f.  Order Defendant to pay to Plaintiff and the Classes restitution to restore all funds acquired by means of any act or practice declared by the Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon to the extent provided by law;

    g.  Order Defendant to disgorge or return to Plaintiff and the Classes all

monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

h. Order Defendant to pay Plaintiff and the Classes all actual, compensatory, exemplary, and statutory damages or penalties permitted under the counts alleged in this Class Action Complaint in an amount to be determined by the Court, but at least $5,000,000;

i. Order Defendant to pay Plaintiff and the Classes punitive damages on any count so allowable;

j. Order Defendant to pay Plaintiff and the Classes their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

k. Award such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims so triable.

Dated:    May 6, 2025                    By: _Matthew J. Langley_
                                         Matthew J. Langley (SBN 342846)
                                         **ALMEIDA LAW GROUP LLC**
                                         849 W. Webster Avenue
                                         Chicago, Illinois 60614
                                         t: 773-554-9354
                                         matt@almeidalawgroup.com

                                         *Attorney for Plaintiff & the Proposed Classes*